307 S.W.3d 631 (2010)
S.R., Mother, Appellant,
v.
J.N., Father; and D.N., a Minor Child, Appellees.
No. 2009-CA-001621-ME.
Court of Appeals of Kentucky.
March 26, 2010.
Dianna Riddick, Benton, KY, for appellant.
No Brief for Appellees.
Before ACREE and MOORE, Judges; BUCKINGHAM,[1] Senior Judge.

OPINION
ACREE, Judge.
S.R. (Mother) appeals an order of the Marshall Family Court finding her son D.N. an "abused or neglected child" pursuant to KRS 600.020 and removing him from Mother's custody. After careful review of the record, we vacate portions of the order and remand.
Mother and J.N. (Father) were married in 2005 and later that year had a child, D.N. In April 2006, the parties initiated divorce proceedings in Marshall County. The entire period was tumultuous for the partiesMother and Father separated and reconciled several times in a two-year span, and their disputes occasionally required police intervention. Custody of D.N. was also a contentious issue. Ultimately, the family court awarded custody to Mother and visitation to Father. The strength of Mother's relationship with her new husband, Elvis Rambo, was a contributing factor in that determination because the court believed Rambo was a level-headed and calming influence on Mother. *632 Rambo and Mother had a child of their own, E.R., in late 2008.
However, not long after the birth of E.R. the relationship between Mother and Rambo began to deteriorate. Their relationship problems culminated in a dispute on the evening of April 22, 2009, and the morning of April 23, 2009.[2] While the dispute was occurring, Rambo contacted Father and told him of certain and various behavior allegedly exhibited by Mother which Rambo believed put D.N. at risk.
On the strength of Rambo's statement, Father filed an Emergency Custody Petition pursuant to KRS 610.010 claiming Mother had neglected D.N. Father attached to his petition Rambo's affidavit reiterating the statements he previously made to Father regarding Mother's alleged behavior. The complaint alleged Mother went out drinking the night of April 22, did not return home to care for her children, and was unable to take D.N. to school the following morning "because she was still drunk." Father's complaint also asserted, as Rambo reported, that Mother hit Rambo in the children's presence. Father included in his petition only one allegation not included in Rambo's affidavitthat Mother did not take her prescribed medications "for her bipolar."
In addition to the allegations in the petition, Rambo's affidavit asserted that Mother drinks "all the time"; had stayed out all night drinking on several occasions, leaving D.N. with his stepfather Rambo; throws things at Rambo, including throwing a beverage in his face; routinely lies to Rambo regarding her whereabouts, sometimes falsely claiming she is going to work so she can leave D.N. with either Rambo or his parents; and has come home "several times" with alcohol on her breath.
The family court awarded emergency custody to Father on April 24 and conducted an adjudication hearing on July 21, pursuant to KRS 620.100.
Father testified that, prior to filing the emergency complaint, Mother had sole custody of D.N., and Father had visitation rights. He also explained that he claimed Mother was bipolar in his complaint simply because "you can tell." His assessment was not based on any professional diagnosis.
The majority of Father's proof consisted of Rambo's testimony, closely reflecting his affidavit. Rambo generally asserted that Mother had a tendency to drink to excess from January to April, and that during that time she had been incapable of caring for D.N. He testified Mother had stayed out all night drinking five times since January 2009. On one of those occasions, he said, Mother had returned home in the early morning hours smelling of alcohol. On another occasion in January, Mother had stayed in a hotel room with friends because she was too intoxicated to drive home. Rambo admitted he was also drinking that particular night, and that D.N. and E.R. were being cared for by someone else. On three of those five occasions, said Rambo, he was forced to either care for D.N. himself or to find care for the child.
Rambo also testified regarding Mother's medications. He claimed Mother had been prescribed three different medications, but he also claimed that she denied needing to take her medication and that he found full prescription bottles in odd places around the home. However, he acknowledged that he did not know either how often she was instructed to take her medications or how often she actually took them.
*633 He also generally stated that Mother punched him and smacked him, identifying only one specific incident in which she threw a glass of chocolate milk in his face.
On the other hand, Rambo testified that Mother properly clothed the children and changed their diapers. According to Rambo, she never abused the children. He also stated D.N. and Mother have a close relationship.
Rambo testified particularly regarding the events of April 22-23. Rambo claimed Mother originally said she was going to attend a Mary Kay party, and that she called him at 9:00 p.m. promising she would return home. When she did not return by the time he thought she should, Rambo attempted to contact Mother several times because, as he testified, he had to leave for work early the morning of April 23, and he was concerned Mother would not return home to care for the children before that time. She did not respond to Rambo until 6:19 a.m. on April 23. Rambo testified that Mother had been too hung-over to take D.N. to school the morning of April 23. According to Rambo, Mother admitted she had gone out drinking on the night of April 22 and had fallen asleep because she was drunk.
Mother disputed much of what Rambo had to say. She denied going out drinking all night, with the exception of the one night in January when she and Rambo were together drinking and the children were being cared for by a third party. She agreed with Rambo's testimony that on that occasion she spent the night with friends in a hotel room. She claimed she does not drink alcohol on a regular basis, and in fact imbibes alcohol only approximately once every month to two months. She testified that, since her daughter was born, she had only gone out drinking the one time in January. She claimed she and Rambo had been having many marital problems leading to the incident in April. The marital problems, she said, were partly the result of Rambo's tendency to patronize strip clubs.
Mother testified that she was prescribed two, and not three, medications, and that she takes them regularly as prescribed. Obviously, she had ensured that the prescriptions had been filled.
Mother also asserted she did not hit Rambo or throw things at him, with the exception of one glass of chocolate milk, which she tossed on him after he threw a plate of spaghetti in her face. During that incident, she said, the children were asleep in their rooms with the doors shut. She said she had not pushed Rambo.
Regarding the incidents of April 22-23, she testified that she left home after the children had fallen asleep and were in Rambo's care. She told Rambo she intended to visit a friend named Dawn, but actually intended to visit a different friend, Roberta. Mother testified she misrepresented her destination because she worried Rambo would come to Roberta's house and disturb her with Mother's and Rambo's marital difficulties. Mother also claimed she watched a movie with Roberta and unintentionally fell asleep, not waking until approximately 2:00 a.m. She claims she drank no alcohol that evening or early morning.
Mother claimed that when she awoke at approximately 2:00 a.m., she discovered numerous text messages from Rambo demanding to know her whereabouts and text messages from her mother (Grandmother) advising her not to return home because Rambo was upset. She also learned Grandmother had already picked up D.N. from Rambo's and Mother's home and was caring for him. According to Mother's version of events, she decided to remain at Roberta's house until she could *634 go to a bank at approximately 8:00 a.m. to retrieve money from the parties' account to hire a lawyer to begin divorce proceedings. She then went to Grandmother's house and later returned to the marital home to retrieve some of her belongings. She offered into evidence school records which indicated D.N. had not been absent from school on April 23.
Two other witnesses testified on Mother's behalf, and they supported her version of the events of April 22-23. Mother's friend Roberta Parker testified they were together then and Mother had not consumed alcohol. Grandmother testified that Mother did not sound or appear drunk on those dates when she communicated with her daughter.
Following the hearing, the family court ruled D.N. was an abused or neglected child and placed him in Father's care. This appeal followed.
On appeal, Mother asserts the family court erred in three respects: (1) failing to determine the truth or falsity of the allegations in the complaint, as required by statute, and instead relying upon evidence the court heard in prior actions before the family court; (2) making findings of fact regarding Rambo's testimony which were clearly erroneous; and (3) erroneously concluding D.N. was neglected, especially in light of testimony that he was routinely cared for by competent caregivers.
KRS 620.100 governs adjudicatory hearings following the temporary removal of a child from his or her custodian. When a court determines such a hearing is required, "[t]he adjudication shall determine the truth or falsity of the allegations in the complaint. The burden of proof shall be upon the complainant, and a determination of dependence, neglect, and abuse shall be made by a preponderance of the evidence." KRS 620.100(3). Whether a trial court correctly applied a statutory standard is assessed de novo, with no deference to the trial court. Brewick v. Brewick, 121 S.W.3d 524, 526 (Ky.App.2003), citing Carroll v. Meredith, 59 S.W.3d 484, 489 (Ky.App.2001).
Findings of fact are reviewed for clear error. Kentucky Rule of Civil Procedure (CR) 52.01. A trial court's decision is not clearly erroneous if it is supported by substantial evidence. Owens-Corning Fiberglas Corp. v. Golightly, 976 S.W.2d 409, 414 (Ky.1998). "Substantial evidence" is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]." Id. Furthermore, parties have a right to have matters before trial courts "adjudicated from the evidence of record[.]" See Skinner v. Skinner, 249 S.W.3d 196 at 201 (Ky.App.2008). A trial court's reliance upon evidence not in the record constitutes clear error. Id. "The trial court has broad discretion in determining whether the child fits within the abused or neglected category[.]" R.C.R. v. Commonwealth, Cabinet for Human Resources, 988 S.W.2d 36, 38 (Ky.App.1998), citing Department for Human Resources v. Moore, 552 S.W.2d 672, 675 (Ky.App.1977).
The applicable statute specifically states that the court "shall determine the truth or falsity of the allegations in the complaint." KRS 620.100(3). The only findings of fact which addressed the allegations in the complaint are as follows:
14. Around January of 2009, [Mother] and Elvis began having marital problems which led to heated verbal altercations and throwing items between the two.
15. On April 22, 2009, [Mother] stayed out all night, lied to Elvis about where she was and did not return home to care for her two children until the next morning.

*635 16. Elvis signed an Affidavit in support of [Father]'s Complaint for emergency custody in the above-styled action and testified at the adjudication hearing that:[3]
(a) From January, 2009 to April, 2009, [Mother] failed to come home on five different occasions and had left [D.N.] in his care on three of those occasions;
(b) [Mother] drinks excessively at times when the children are in her care;
(c) [Mother] comes home with alcohol on her breath;
(d) [Mother] fails to take her prescription medications for her mental health issues;
(e) [Mother] is often very aggressive, both verbally and physically; and
(f) [Mother] lies a lot about where she is going and what she is doing.
17. [Mother] denied Elvis' allegations, denied she drinks excessively, that she has anger control issues or that she fails to take her medication as prescribed.
Comparing these findings to the petition, we note that the family court determined the truth or falsity of only two of the allegations in that petition. Failing to make such a determination as to the remainder of the allegations is contrary to the requirement of the statute. That was improper.
The family court determined as true the allegations (1) that Rambo and Mother engaged in arguments which led them both to throw items at each other, and (2) that on April 22-23 Mother had stayed out of the marital home the entire night without informing Rambo of her whereabouts, during which time D.N. was not in her care. The testimony of both Mother and Rambo supported these findings of fact as well as the fact that D.N. was in the care of Rambo and Grandmother during that time. These findings alone were therefore supported by substantial evidence.
The conclusion that D.N. was abused or neglected, however, was not supported by substantial evidence. The family court specifically cited KRS 600.020(1)(c) when it found, "[Mother] has engaged in a pattern of conduct over the years which has rendered her incapable of caring for the immediate and ongoing needs of her child." The only two facts determined by the family court to be true allegations in the petition are insufficient to support such a conclusion. A single incident of leaving the home, especially when the child was in the care of his stepfather and Grandmother, hardly constitutes a pattern of behavior. Even when combined with the "verbal altercations" and "throwing items," the findings of fact do not lead a reasonable person to conclude Mother's behavior rendered her incapable of caring for D.N. It is unclear from the record in what way these events prevented Mother from meeting D.N.'s needs.
Although the family court is accorded great deference in determining when a child is abused or neglected, and despite this Court's requirement to give substantial deference to the trial court on questions of fact, the conclusion in this case was so clearly based on less than substantial evidence, we cannot let it stand. This is especially true in light of other important aspects of the family court's order.
As discussed earlier in this opinion, aside from findings of fact numbers 14 and 15, the other allegations of the complaint were not appropriately addressed. The court did not make a determination of the *636 truth or falsity of Rambo's accusations that Mother had been "drinking all the time," that she did not take her medications as prescribed, and that she frequently left home all night leaving Rambo to care for the children. With regard to the vast majority of the allegations in the petition, the trial court did not find either that they were true or that they were false.
It is possible the court did not know which party to believe, and absent independent evidence from a disinterested witness, simply was not convinced one way or another regarding the majority of the allegations. If this was the case, however, the complainant failed to prove his allegations by a preponderance of the evidence as required by KRS 620.100, and the trial court should have found in Mother's favor.
Also, although the family court repeatedly reminded the parties during the hearing that the matter before him was the truth or falsity of the allegations in the complaint, he went beyond the allegations in the complaint and beyond the testimony at the hearing to make a determination. The family court's "Adjudication Findings of Fact and Conclusions of Law" included excerpts of evidence from other cases, namely the custody disputes between Mother and Father. The adjudication contained portions of a custody evaluation submitted by Forget-Me-Not Children's Center, Inc., excerpts from the family court's order granting Mother custody of D.N., and the court's own knowledge of the parties' relationship and past behavior knowledge it acquired in the course of the divorce and custody action. None of this evidence had been submitted as part of the complaint or made part of the record in the abuse and neglect action.
Additionally, in the section of the adjudication entitled "Conclusions of Law," the family court "found by a preponderance of evidence that [Mother] has engaged in a pattern of conduct over the years which has rendered her incapable of caring for the immediate and ongoing needs of her child." (Emphasis added). The order also noted "ongoing anger control issues which have led to numerous altercations with boyfriends and husbands[]" and "a pattern over the years of being unable to control her behavior in order to provide her children a safe and domestic violence free home to live in." (Emphasis added). The court also noted "[Mother's] problem exists and has not improved over the last four years." (Emphasis added).
The final paragraph, also contained in the section entitled "Conclusions of Law," reads,
When this Court awarded [Mother] sole custody in August of 2008, it was not because the Court determined she has superior parenting skills to that of [Father]. She was awarded sole custody in that it was believed that her new marriage to Mr. Rambo and their home environment appeared to be a more stable and nurturing home than that of [Father]'s. It was also believed at the time that her erratic mood swings and lack of anger control was largely as a result of her "on again, off again" relationship with [Father]. Her relationship as described by Mr. Rambo has several similarities to that of her relationship with [Father]. She continues to put her self interest above that of her children, she continues to have erratic mood swings, she continues to drink excessively and continues to be unable to control her anger.
Neither testimony nor documentary evidence in this record addressed the allegations of Mother's mood swings or alcohol use prior to January 2009, or her "pattern of conduct over the years." Relying upon *637 evidence not in the record to reach a decision following the adjudication was error.
As Mother notes in her appeal, the language of the conclusions of law appears to be intended to adjudicate custody of D.N., and not simply to determine whether D.N. is "abused or neglected" pursuant to the statute. The purpose of the dependency, neglect, and abuse statutes is to provide for the health, safety, and overall wellbeing of the child. KRS 620.010. It is not to determine custody rights which belong to the parents. A dependency, neglect or abuse adjudication hearing is simply not the appropriate forum for rehashing custody issues. The record bears some support for Mother's perception that the family court decided he simply had had enough of Mother's behavior "over the years."
It is true that a circuit or family court may take judicial notice of its own records and on its own initiative. Kentucky Rule of Evidence (KRE) 201 governs this matter and provides:
A judicially noticed fact must be one not subject to reasonable dispute in that it is either:
(1) Generally known within the county from which the jurors are drawn, or, in a nonjury matter, the county in which the venue of the action is fixed; or
(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
KRE 201(b)(2). Presumably, when a circuit court takes notice of its own order, it does so under section (2) of this statute. A finding of fact contained in an order of a circuit court is typically not subject to reasonable dispute; if the family court in the instant case had wished to take notice of its findings of fact in the prior custody case, it could have properly done so, keeping in mind that such findings may be affected by the passage of time and changes in circumstances. However, its consideration of the evidence it heard in the earlier action was improper for two reasons.
First, KRE 201(e) requires a court to give the parties notice of its intention to take judicial notice of any matter and "an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." Our review of the record reveals no such notice or opportunity in the action sub judice.
Second, the family court did not limit its consideration to its own prior orders, which are reasonably certain and typically not subject to dispute, but relied on evidence that was offered in that case. Evidence introduced in an adversary proceedingand not stipulated to by the parties or reduced to a finding by the courtis by its nature subject to dispute. Unless the circuit court ruled on the truth or falsity of that evidence in the prior proceedings, thereby making it a judicially noticeable finding of fact, then that evidence cannot be judicially noticed. Our Supreme Court has stated the rule generally that courts "cannot adopt by judicial notice the evidence introduced in [one] case for the purpose of proving a similar proposition in another case." Johnson v. Commonwealth, 12 S.W.3d 258, 263 (Ky.1999) (emphasis original). We believe the rule is no less applicable in the case before us.
A family court is no less bound by procedural, substantive and evidentiary rules of law than any other circuit court simply because the creation of family courts was animated by the "one judge-one family" policy. Louise E. Graham & James E. Keller, 15 Ky. Prac. Domestic Relations Law § 8:27 (3d ed. 2008) ("The `one judge-one family' policy animating the creation of Family Courts in Kentucky is designed to reduce stress for families and promote the efficient delivery of services to those families *638 whose disputes involve them in the court system."); see also KY. CONST. § 112(6); KRS 23A.100. Family court judges become familiar with the families that appear before them, and with their disputes. Judges will be left with impressions that may or may not be relevant to the issue then before the court. If those impressions are not sufficiently relevant, or do not carry sufficient veritas to make them judicial findings, they should have no legal import in any proceeding. We learn by the case before us that if a family's various causes of action in family courts are not kept distinct by the court's adherence to well-founded rules, parties or the court itself could leverage mere impressions from a prior proceeding into findings in a subsequent one, despite that in the prior action the impression was not sufficient to merit establishment as a judicially noticeable finding of fact. This can and does occur when a party attempts to re-adjudicate custody issues by raising allegations of dependency, abuse, or neglect. Dutifully following well-founded rules of court will prevent such manipulation.
Considering the family court's actions in this case collectively, it is clear the order finding D.N. was abused or neglected was erroneous as a matter of law. The family court did not follow the statutory requirement that it determine the truth or falsity of the allegations in the complaint. The adjudication does not comply with KRS 620.100. It is also clear the family court relied upon information outside the record that was neither raised as an allegation in the complaint nor presented as evidence during the hearing. As a result, the conclusion that D.N. is abused or neglected is not based upon substantial evidence.
We therefore vacate the order of July 28, 2009, to the extent that it addresses evidence not in the record. We remand this matter to the family court for entry of an order which determines the truth or falsity of all of the allegations in the complaint, based upon the record in Marshall Family Court Action No. 06-J-0120-004 and that record alone; provided, however, that nothing in this opinion should be interpreted to prohibit the family court, pursuant to KRE 201, from taking judicial notice of factual findings in other cases involving the same family.
MOORE, Judge, concurs.
BUCKINGHAM, Senior Judge, dissents and files separate opinion.
BUCKINGHAM, Senior Judge, dissenting.
I understand the majority's concern with the family court's removal of the child from the mother without more specific findings concerning the allegations in the complaint. While the family court's determinations were more general than specific, I conclude they were sufficient to support its decision and did not improperly rely on matters in a previous case between the parties. Thus, I respectfully dissent.
At the outset, I note that the appellees did not file briefs to refute the arguments made by the appellant in her brief. Pursuant to CR 76.12(8)(c), we may accept the appellant's statements of the facts and issues as correct, reverse the judgment if the appellant's brief appears to sustain such action, or regard the failure to file a brief as a confession of error and reverse the judgment without considering the merits of the case. The appellees' failure to file briefs places this court in a difficult position, especially when the order under review involves the removal of a child from a parent.
I disagree with the portion of the majority opinion that states that the family court's findings of fact were insufficient and improperly relied on information outside *639 the record and that directs the court to enter an order based upon the record in this case alone. It is apparent that the family court relied on matters in previous proceedings between these parties. However, "[t]he rule in this jurisdiction is that in a case pending before it a court will take judicial notice of a record in the same court in a case involving the same parties and the same questions[.]" Maynard v. Allen, 276 Ky. 485, 124 S.W.2d 765, 767 (1939).
Just as important, a panel of this court in J.C. v. K.M., 2009 WL 3487629 (rendered October 30, 2009, unpublished), addressed a very similar issue involving this same family court. In that case, the court affirmed the court's order in a neglect proceeding where the court had stated that it "has taken judicial notice of the pleadings, findings, stipulations and Orders" in other cases before that court. I conclude that this court is sending conflicting directions to the Marshall Family Court. I disagree with the portion of the majority opinion that prohibits the family court from taking judicial notice of the record in other cases in that court to the extent that those cases involve these same parties and the same questions.
The majority determined that the family court found only that Rambo and Mother had engaged in arguments that led them to throw things at each other and that on one specific occasion Mother had stayed out all night without informing Rambo of her whereabouts. The majority determined that these findings, which the majority acknowledged were supported by substantial evidence, were insufficient to warrant removal of the child. The majority criticized, however, the additional findings of the family court that Mother had "ongoing" anger management problems and describing her behavior as a "pattern" existing over the years. The majority states that there was no evidence of alcohol abuse or mood swings before January 2009 or evidence of a pattern of conduct over the years.
I note that the family court stated in its adjudication that Mother "continues to put her self interest above that of her children, she continues to have erratic mood swings, she continues to drink excessively and continues to be unable to control her anger." (Emphasis added). Although these statements by the family court were in its conclusions of law rather than its findings of fact, I believe it is clear that they are factual determinations that constitute substantial evidence to support the court's decision. These findings relate to conduct of Mother that was presently before the court and not to conduct previously before the court in another case.
Further, as noted by the majority, the family court was well aware that the matter before it was the truth or falsity of the matters in the complaint, and it repeatedly reminded the parties of that fact. I believe it is apparent that the family court properly based its decision on the truth of the new allegations. I further believe that the family court's consideration, based on facts before it in a previous case, that Mother's problems were "ongoing" and represented a "pattern" of conduct was not improper. I would affirm the family court's order.
NOTES
[1] Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.
[2] Unless otherwise noted, all dates hereafter occur in 2009.
[3] Note that "finding of fact" 16 only states Elvis signed an affidavit and testified about the enumerated allegations, but does not determine whether any of the statements in the affidavit were true.