RENDERED: APRIL 8, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0094-MR

STEPHEN GRANT PORTER, JR.                    APPELLANT

APPEAL FROM DAVIESS CIRCUIT COURT
v.         HONORABLE JOHN M. MCCARTY, SPECIAL JUDGE
ACTION NO. 19-CI-00617

NICOLE ABBOTT                                APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: GOODWINE, MAZE, AND McNEILL, JUDGES.

GOODWINE, JUDGE: Stephen Grant Porter, Jr. ("Porter") appeals the judgment on custody, timesharing, and child support entered by the Daviess Circuit Court, Family Division, on October 30, 2020. After careful review, we reverse and remand for proceedings consistent with this Opinion.

## BACKGROUND

Porter and Nicole Abbott ("Abbott") are the parents of C.L.P., a minor child born on December 10, 2015. The parties never married but were living together at the time of the child's birth and continued to do so until the relationship ended sometime in 2017. In the same year, Porter petitioned for and was granted a domestic violence order ("DVO") on behalf of the child against Abbott.[1] Pursuant to a safety plan created by the Cabinet for Health and Family Services ("CHFS"), the child was placed in Porter's care.

On June 13, 2019, Porter filed a verified petition for sole custody, primary residential custody, timesharing, child support, and allocation of the tax exemption. At that time, the child had been in Porter's sole care for approximately two years. Abbott had not visited with the child during those two years. In January 2019, Abbott entered residential substance abuse treatment at Women's Addiction Recovery Manor ("WARM") in Henderson, Kentucky.

Within the custody action, on September 30, 2019, the parties agreed to a temporary supervised timesharing schedule for Abbott. They agreed the child would continue to primarily reside with Porter and Abbott would have overnight visits once per week to be supervised by either the maternal grandparents or the staff at WARM. On December 23, 2019, the parties agreed to amend Abbott's

---

[1] The DVO was not made part of the record in this matter.

timesharing to make it unsupervised. She was still residing at WARM and the visits occurred at her parents' home.

On March 13, 2020, the family court held a hearing on custody, timesharing, and child support. The court heard testimony from both parties and Abbott's mother.

During her testimony, Abbott admitted she had been in active addiction to methamphetamine and alcohol for the entirety of the child's life until she entered treatment at WARM. She did not visit the child from the time he was removed from her care in 2017 until she began supervised visits in 2019. Prior to her current program at WARM, Abbott attempted treatment on at least three occasions but left prior to completion each time. Abbott claimed she had been sober since entering treatment in January 2019.

At the time of the hearing, Abbott was residing at WARM and would be until at least April 2020. She expressed uncertainty about where she would live after completing treatment. At that time, there was no availability in the independent living apartments associated with WARM. Because of this, Abbott planned to live with her fiancé who she admitted had a history of substance abuse and had not completed treatment. Abbott conceded she could not have primary residential custody of the child while residing at WARM.

Despite having no contact with the child for two years, Abbott testified her visits had been going well since 2019. She did not provide financial support and was not involved in any caregiving, educational, or medical decisions during the time the child was in Porter's sole care. She began working part-time at a Shell gas station the day before the hearing.

During her testimony, Abbott expressed concern about the child's speech and questioned whether he was receiving proper treatment. She claimed to have contacted the child's school but did not address her concerns regarding his speech with school personnel.

During his testimony, Porter conceded it would be best for the child for the parties to share joint custody. He expressed willingness to agree to expanded timesharing for Abbott once she completed treatment and obtained independent housing.

Porter acknowledged the child's speech issues. He enrolled the child in preschool a year early so that he could receive speech therapy. He reported that the child remained in speech therapy at the time of the hearing and was up-to-date on all medical appointments and immunizations.

With regard to his criminal history, Porter was charged with trafficking in marijuana and pled guilty to possession of marijuana in 2015. He

also admitted to convictions for possession of marijuana in 2005 and assault in the third degree in 2002.

Porter's fiancée, Jennifer Johnson ("Johnson"), lives with him and the child. She assists in caring for the child, including providing transportation. She was charged with driving under the influence ("DUI") in 2019. Porter testified that he had no knowledge of the incident because it occurred prior to their meeting. He testified Johnson was an alcoholic in the past and possessed a valid driver's license.

Finally, Abbott's mother testified to Abbott's progress in recovery. She believed her daughter would be an appropriate custodian once she completed treatment. She also reiterated Abbott's concerns about the child's speech.

The family court did not enter a judgment until October 30, 2020, more than seven months after the hearing. On June 10, 2020, CHFS initiated a dependency, neglect, and abuse ("DNA") action against Porter. According to the custody judgment, as a result of the DNA action, the child was placed in Abbott's care by recommendation of CHFS.

In the October 30, 2020 judgment on custody, timesharing, and child support, with regard to the DNA action, the court found:

> Due to the confidential nature of this case and parties and
> children not involved in this Circuit action, the [c]ourt
> will consider all pleadings and previously heard
> testimony in this action when making a determination as

it pertains to the safety and best interest of the child[.] . . . This [c]ourt would note that this case was before the same Judge, same parties as well as same counsel. In the [j]uvenile action, the minor child is now currently primarily residing with [Abbott] with [Porter] exercising custodial time on alternating weekends.

Record ("R.") at 120.

The court addressed timesharing as follows:

The [c]ourt has weighed all factors concerning equal shared parenting time between the parties and concludes that the concerns set out in the [f]indings weigh in favor of joint custody with [Abbott] being designated primary residential custodian. The [c]ourt notes that equal shared parenting time is not workable in the current situation[] because of the differences between the parties' residences, work schedules and other household occupants. Weighing all the above factors, the [c]ourt concludes that it is in the best interest of the child for [Abbott] to be designated as the primary residential custodian with reasonable visitation by [Porter].

*Id.* Porter was granted timesharing on the first, third, and fourth weekends of each month from Saturday morning until midday Sunday, and every Wednesday.

The court subsequently denied Porter's motion to alter, amend, or vacate the judgment. The appeal followed.

**STANDARD OF REVIEW**

The family court has broad discretion in determining timesharing. *Barnett v. White*, 584 S.W.3d 755, 759 (Ky. App. 2019) (citation omitted). The

court must comply with the requirements of KRS[2] 403.270(2) and, if it has done so, we will defer to its decision so long as it is not clearly erroneous or an abuse of discretion. *Id*.

## ANALYSIS

Before proceeding with our analysis, we must note that Abbott failed to file a brief in this matter.

> If the appellee's brief has not been filed within the time allowed, the court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

CR[3] 76.12(8)(c). Upon review, we conclude Porter's brief reasonably appears to sustain reversing this matter to the family court. *Id.* With this in mind, we will address the merits of his appeal.

On appeal, Porter argues: (1) the court abused its discretion in failing to apply the presumption of equal timesharing in KRS 403.270(2); and (2) the family court erroneously relied on evidence not in the record in making its decision.

---

[2] Kentucky Revised Statutes.

[3] Kentucky Rules of Civil Procedure.

First, Porter argues the family court abused its discretion failing to comply with KRS 403.270(2) when it named Abbott primary residential custodian and restricted his timesharing to one day per week and three overnight visits per month. When making timesharing determinations, the family court must comply with the following statutory mandates:

> The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent[.] . . . [T]here shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent . . . has with the child and is consistent with ensuring the child's welfare. The court shall consider all relevant factors including:
>
> (a) The wishes of the child's parent or parents . . . as to his or her custody;
>
> (b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent . . . may have over the child's wishes;
>
> (c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;
>
> (d) The motivation of the adults participating in the custody proceeding;
>
> (e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved; [and]

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program[.]

KRS 403.270(2).[4]

Herein, the family court stated that it considered "all factors concerning equal shared parenting time" but determined equal timesharing was "not workable in the current situation[] because of differences between the parties' residences, work schedules and other household occupants." R. at 120. The court did not elaborate on these findings nor does it explain how they relate to the factors defined in KRS 403.270(2). Furthermore, the court did not address what evidence presented at the hearing overcame the presumption of equal timesharing. These findings are insufficient under the statute.

Next, Porter concedes he did not preserve his argument regarding the court's reliance on evidence not in the record and requests review for palpable

---

[4] KRS 403.270(2) includes several additional factors which a court must consider where a *de facto* custodian is a party to the action. These factors are not relevant to this matter.

error. "A palpable error which affects the substantial rights of a party may be considered by the court on motion . . . even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." CR 61.02. "Fundamentally, a palpable error determination turns on whether the [C]ourt believes there is a substantial possibility that the result would have been different without the error." *Hibdon v. Hibdon*, 247 S.W.3d 915, 918 (Ky. App. 2007) (internal quotation marks and citation omitted).

The family court's reliance on facts from the separate juvenile action constitutes palpable error. "[P]arties have a right to have matters before trial courts adjudicated from the evidence of record." *S.R. v. J.N.*, 307 S.W.3d 631, 634 (Ky. App. 2010) (internal quotation marks and citation omitted). Clear error is committed when a court relies upon evidence not in the record. *Id.*

Herein, without stating it was taking judicial notice, the family court relied upon the DNA action in making determinations on custody and timesharing. For example, the family court found Abbott was living in an apartment in Henderson, Kentucky, where the record in this matter shows her only residence throughout these proceedings to have been at WARM. R. at 116. At the hearing, Abbott clearly stated that, while living at WARM, she could not have primary residential custody. She also expressed uncertainty about where and with whom

-10-

she would live after leaving treatment. Nothing in the record of this action indicates whether she completed treatment or obtained housing on her own or with her fiancé.

The court also found, "[i]n the [j]uvenile action, the minor child is now currently residing with [Abbott] with [Porter] exercising custodial time on alternating weekends." *Id.* at 120. The family court then grants Abbott primary residential custody based on the record in both actions. *Id.* Because these facts are not in the record in this matter, the family court's reliance thereon constitutes palpable error.[5]

On remand, the family court should consider and make findings as to the factors in KRS 403.270(2) and the presumption of equal timesharing. The record in this matter does not appear to support a deviation from equal timesharing. However, the family court may take judicial notice of facts "not subject to reasonable dispute" on its own initiative. *See S.R.*, 307 S.W.3d at 637; *see also* KRE[6] 201(b). Before doing so the court should give the parties notice of its intention to take judicial notice so that they may have an opportunity to be heard

---

[5] On appeal, Porter moved to supplement the record with the dispositional order from the DNA action to "bring a clarity to the record which will not exist without it." This was unnecessary and potentially raises the question of whether doing so constituted waiver of his argument that the family court relied on facts not in the record. However, because Abbott did not file a brief and raise this issue, we decline to address it.

[6] Kentucky Rules of Evidence.

"as to the propriety of taking judicial notice and the tenor of the matter noticed."

KRE 201(e).

## **CONCLUSION**

Based on the foregoing, the October 30, 2020 judgment of the Daviess Circuit Court, Family Division is reversed and remanded.

ALL CONCUR.


BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

William D. Tingley
Ft. Mitchell, Kentucky