RENDERED: AUGUST 15, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1374-ME

C.M.                                                                            APPELLANT

v.

APPEAL FROM BULLITT FAMILY COURT
HONORABLE ELISE SPAINHOUR, JUDGE
ACTION NO. 17-J-00030-003

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY
SERVICES; J.M., A MINOR CHILD;
AND B.Y.                                                                  APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

McNEILL, JUDGE: Appellant C.M. (Mother), appeals from the disposition order of the Bullitt Family Court which returns joint custody of J.M. (Child) to her and Appellee B.Y. For the following reasons, we affirm the order of the Bullitt Family Court.

## BACKGROUND

Mother and B.Y. have a long and litigious history. However, the following facts are undisputed: (1) B.Y. is not Child's biological father; (2) B.Y. has provided care and support for Child throughout the entirety of his life; and (3) Child considers B.Y. his father. In 2016, Mother filed a civil custody action regarding Child and a daughter the parties' share. An agreed custody order was entered where the parties would "share joint custody and possession of the minor children, [daughter] and [Child,]" with equal parenting time. Record ("R.") at 174.

In January 2017, a dependency, neglect, and abuse (DNA) petition was filed against Mother, and B.Y. was awarded temporary custody of Child. Bullitt Circuit Case No. 17-J-00030-001.[1] B.Y. apparently had custody of Child from January 2017 until July 2023, when a DNA petition was filed against him. Bullitt Circuit Case No. 17-J-00030-002.[2] Following a temporary removal hearing, Child's maternal grandmother was given temporary custody. Mother was not considered for placement because of the active DNA action against her. Ultimately, this second DNA action was dismissed in December 2023.

---

[1] The Court may take judicial notice of these filings. *Polley v. Allen*, 132 S.W.3d 223, 226 (Ky. App. 2004).

[2] *See* footnote 1, *supra*.

A third DNA petition was filed, again against B.Y., on August 14, 2023. Bullitt Circuit Case No. 17-J-00030-003. The present appeal stems from this third DNA action. It is worth noting that the DNA petition indicates that "[B.Y] (NF)"[3] is the person believed to be responsible for the neglect or abuse, and while the petition lists Child's legal father as unknown, it also includes B.Y.'s social security number and date of birth in the space designated for Child's legal father. At a hearing in October 2023, the Cabinet for Health and Family Services (the Cabinet) questioned whether it could proceed because B.Y. had not been established as Child's biological father. Video Record ("V.R.") October 11, 2023 – 10:24:01-10:27:24. Child's guardian *ad litem* (GAL) disagreed with the Cabinet's position, arguing that B.Y. exercised custody and control over the child. *Id*. The family court agreed with the GAL and overruled "that motion." *Id*. It is unclear what motion the family court was referring to because the Cabinet did not make an oral motion, and this Court could not locate a motion or order regarding this issue in the written record.

Regardless, the DNA action proceeded in a routine fashion and an adjudication order was entered on December 11, 2023, wherein B.Y. was adjudged to have abused or neglected Child and temporary custody of Child remained with Child's maternal grandmother. Subsequently, the Cabinet filed multiple

---

[3] NF is a common abbreviation in DNA actions for natural father.

dispositional reports with a recommended permanency goal of reunification with parents.  Mother did not object to this recommendation until July 28, 2024, when she filed a written objection arguing B.Y. did not have standing to pursue reunification or custody because he was not Child's biological father.  R. at 164.  Mother had previously regained custody on March 15, 2025, when the family court issued a temporary custody order awarding joint custody of Child to Mother and the maternal grandmother.

The disposition hearing occurred on August 14, 2024.  Thereafter, the family court issued a form AOC[4]-DNA-5 Disposition Hearing Order.  The family court checked the boxes that the facts supported removal or continued removal of Child and that best interests required a change in custody.  R. at 217.  The family court ordered:

> NF shall have unsupervised visits.  NF's visits shall occur on alternate weekends from Friday after school until Monday morning when child [sic] returns the child.  The parties shall share joint custody.

R. at 219.  As a result of the disposition order, joint custody was returned to Mother and B.Y.

Mother then filed a motion to alter, amend, or vacate the disposition order.  R. at 220.  She stated that the disposition order was silent as to her written

---

[4] Administrative Office of the Courts.

objection, and that the disposition order referred to B.Y. as "NF," even though it was uncontested that he is not Child's biological father. *Id.* On September 19, 2024, the family court made findings of fact and issued an order granting Mother's motion to the extent it "delete[d] the reference to [B.Y.] as the child's father" and there were additional findings of fact. R. at 222. It found that fictive kin would be a more appropriate designation. *Id.*

In all other respects, Mother's motion was denied. The family court cited to this family's extensive history and said Mother had not raised the issue of paternity until recently. The order reiterated that Mother was instructed to file paternity and custody actions if she wished to challenge these issues, but that the family court's goal in the DNA action was to reunify the child with his family. The family court concluded that family, as contemplated by the relevant statutes, did not always mean a child's biological family. It found that Child "is bonded to [B.Y.] in the way a natural parent usually bonds with their child," that B.Y. "offered the care expected of a parent for many years," and "[t]o disrupt the relationship between [Child] and [B.Y.] with no inquiry into how it would negatively impact [Child] is extremely irresponsible." R. at 225-26. As a result of these findings, the family court reaffirmed the disposition order. This appeal followed.

**STANDARD OF REVIEW**

Mother's sole argument on appeal concerns B.Y.'s standing in the underlying DNA action. The issue of standing is a legal question and is reviewed *de novo*. *F.E. v. E.B.*, 641 S.W.3d 700, 704 (Ky. App. 2022).

**ANALYSIS**

Mother argues B.Y. lacks standing to pursue custody and reunification in the DNA action because: (1) he is not Child's biological father; (2) he has never been found to be Child's *de facto* custodian; and (3) B.Y. cannot obtain standing as a person acting as a parent. These arguments confuse the purpose of custody in a DNA action under KRS[5] Chapter 620 and a custody determination made pursuant to KRS Chapter 403. As explained by the Kentucky Supreme Court:

> With regard to whether these actions are separate for the purposes of law of the case, this Court agrees with the conclusion of the Court of Appeals in *S.R. v. J.N.*, [307 S.W.3d 631, 637 (Ky. App. 2010)]. *S.R.* held that "[t]he purpose of the dependency, neglect, and abuse statutes is to provide for the health, safety, and overall wellbeing of the child. It is not to determine the custody rights which belong to the parents." Inversely, the purpose of a custody and visitation proceeding is to determine the rights of individuals with standing to seek custody of or visitation with a child. It is not to determine whether or not that child is dependent, neglected, or abused.

---

[5] Kentucky Revised Statutes.

*B.S.S. v. K.S.*, 599 S.W.3d 858, 862 (Ky. 2020) (footnote omitted). While the family court could address permanent custody in the DNA action, there appears to be nothing requiring it to do so in this case. *N.L. v. W.F.*, 368 S.W.3d 136, 147 (Ky. App. 2012).

The family court's focus on reunification in this case was not an error. Here, the family court explicitly said at the dispositional hearing and in the September 19, 2024, order that it would not address the parties' custodial rights in the DNA action. Had the family court been tasked with making an initial custody determination in the DNA action, then, perhaps, its refusal to address custody would be an issue. *F.E.*, 641 S.W.3d at 707. But B.Y. was exercising custody pursuant to the agreed order in the civil custody action prior to any DNA petitions being filed, and the appealed disposition order simply returns the parties to the custody arrangement that existed before the DNA petitions were filed.

The sole issue then becomes whether B.Y. had standing to seek reunification with Child. This Court will only address Mother's argument that B.Y. lacks standing to seek reunification because he is not Child's biological father. Because the remaining arguments pertain only to B.Y.'s standing to seek custody, we will not address them further here. Mother is free to seek redress in a different custody or paternity action, but her arguments do not prevail here in this unification matter.

Citing only KRS 600.010(2)(a), Mother argues the Cabinet had no obligation to reunify B.Y. and Child because the goal of the Unified Juvenile Code is to strengthen and maintain "the biological family unit[.]" She asserts this goal was accomplished when the family court returned custody to her. The legislature may have expressed a preference for biological parents and relatives, but to say biological parents are the only individuals who have standing to seek reunification with a child removed from their custody runs afoul of the plain language of the relevant statutes. The following are only a few examples.

Complaints filed under the Unified Juvenile Code must include the name and residence of the parent and/or legal guardian or any other person exercising custody and control over the child. KRS 610.020(1)(c)-(f). DNA petitions shall be served on "the parent or other person exercising custodial control or supervision," and "shall include an explanation of the importance of the petition and an explanation of the rights of the parent or other person exercising custodial control in any subsequent proceedings." KRS 620.070(2) and (3). In temporary removal hearings "the court shall determine whether there are reasonable grounds to believe that the child would be dependent, neglected or abused if returned to or left in the custody of his parent or other person exercising custodial control or supervision even though it is not proved conclusively who has perpetrated the dependency, neglect or abuse." KRS 620.080(2). When issuing temporary

custody orders the court is required to consider "the wishes of the parent or other person exercising custodial control or supervision[.]" KRS 620.090(2). And KRS 620.100(4) provides that "[t]he disposition shall determine the action to be taken by the court on behalf of the child and his parent or other person exercising custodial control or supervision." Taken together as a whole, KRS Chapter 620 provides standing for other persons exercising custodial control or supervision of a child to seek reunification.

In this case, it is undisputed that B.Y. has exercised custody and control over Child since at least 2016 when the agreed order was entered in the civil custody action. There is also no dispute that B.Y. was exercising custody and control over Child when he was removed from B.Y.'s custody. For these reasons, there is no error with the family court's dispositional order returning joint custody to Mother and B.Y.

## CONCLUSION

For the foregoing reasons, this Court hereby affirms the dispositional order of the Bullitt Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Monica Shahayda
Shepherdsville, Kentucky

BRIEF FOR APPELLEE, BULLITT
COUNTY ATTORNEY:

Tammy R. Baker
Bullitt County Attorney

Matthew A. Pruitt
Assistant Bullitt County Attorney
Shepherdsville, Kentucky