RENDERED: MAY 29, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1184-MR

CHRIS SHARP        APPELLANT

            APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE LAUREN ADAMS OGDEN, JUDGE
            ACTION NO. 25-CI-500202

JAMIRACLE WATTS        APPELLEE

OPINION
VACATING
AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND L. JONES, JUDGES.

COMBS, JUDGE: This matter arises out of a custody dispute between Appellant (Father) and Appellee (Mother), the unmarried parents of two minor children.

On January 25, 2025, Mother, *pro se*, filed a petition for sole custody of the parties' two minor children. The petition reflects that Father is employed full-time in the United States Army and that he usually resides in Kansas. Mother

alleged that there was an active emergency protective order (EPO),[1] that in December 2024 Father had physically assaulted her in front of the children, that Father will not allow Mother access to the children when he has them, and that Mother feared that Father might do something "to spite her."  She additionally urged that "until [Father] can complete anger management, it would be best for visitation to be supervised by a third party when he comes to town."  Mother requested that she be awarded sole custody, that Father complete an anger management course before visitation, and that "visitation be set up with a third party."

On May 2, 2025, Father, *pro se*, filed an "Affidavit of Fact and Information."  Father stated that he was "making a special appearance to preserve his parental rights" and to respond to Mother regarding custody.  Father maintained that he and Mother have shared joint physical custody since their separation on

---

[1] Copies of a Domestic Violence Order (DVO) and corresponding Calendar Order from Jefferson Family Court No. 24-D-504713, entered January 24, 2025, are included in the certified record before us.  (Record on appeal (ROA) pp. 8-11).  The DVO, in effect until 1/20/2028, reflects that the court found "an act(s) of domestic violence and abuse . . . has occurred and may occur again."  The court restrained Father from any contact or communication with Mother and awarded Mother temporary custody of the two children.

We recognize that Father contends that there is an "irregularity," that these documents "were not a part of the original court file when that certification occurred."  (Appellant's brief, pp. 5-6.)  The basis of Father's contention is unclear.  The Clerk's Certification of Record on Appeal is dated December 5, 2025, and attests that there are 84 pages in the record on appeal.  The record on appeal transmitted to us contains 84 pages -- each of which is paginated.  There is no basis for us to question the legitimacy of the certified record.

April 19, 2022.[2]  In that Affidavit, Father references an Exhibit "A" regarding an incident at his residence on December 27, 2024.  Father proposed a modification to the current custody arrangement -- a six month rotational schedule or every summer when school is out, alternating major holidays, with exchanges conducted through a third party.

On May 27, 2025, the family court entered a Hearing Order setting the hearing for July 21, 2025, and allotting 30 minutes.  The court further directed the parties to exchange witnesses lists and an index of all documentary evidence and exhibits to be presented at least 14 days before the hearing.

In his "Affidavit of Fact and Information" of June 24, 2025, Father moved to dismiss under CR[3] 12.02(d) and (e) for insufficient service of process.[4]

On July 21, 2025, the family court conducted a hearing, which we discuss further in our analysis below.  Both parties were present, *pro se*.  Mother appeared in person and Father by Zoom.  On August 22, 2025, the family court

---

[2] It appears that Father may have been referring to an earlier informal custody arrangement between the parties.  The family court awarded temporary custody to Mother in the DVO entered on January 24, 2025 (ROA, p. 11).  However, it is not apparent of record that a *custody decree* was previously entered in this case.  *London v. Collins*, 242 S.W.3d 351, 356 (Ky. App. 2007) ("Before a custody decree is entered the trial court must determine what custody arrangement will be "in accordance with the best interests of the child."  Kentucky Revised Statutes (KRS) 403.270(2).  For a custody order to be a "custody decree," within the meaning of KRS Chapter 403, it must be based on the standards set out in KRS 403.270(2).").

[3] Kentucky Rules of Civil Procedure.

[4] The family court denied the motion to dismiss at the commencement of the hearing.

entered Findings of Fact, Conclusions of Law, and Judgment as follows in relevant part:

> The Court takes judicial notice of findings and orders previously entered in this action; in the companion dependency cases involving the minor children 22-J-500491 and 22-J-500492; and in the companion domestic violence action 24-D-504713-001.
>
> [Mother and Father] are the unmarried, natural parents of J.S. (age 5, born in 2019) and P.S. (age 4, born in 2021). Since December 2024, the children have not seen [Father], and a domestic violence order was entered on January 24, 2025, for [Mother] until January 20, 2028 for a physical altercation between the parties. [Mother] subsequently has enrolled herself into individual counseling and the children into therapy. Due to her concerns for [Father's] behavior towards her and the children, and his military assignment in Fort Riley, Kansas, she requests sole custody and a parenting schedule. [Father] on the other hand, testified that there is nothing wrong with the current co-parenting relationship, and maintaining joint custody is sufficient.
>
> Since child support is being addressed in a separate action, it shall not be discussed herein.
>
> KRS 403.270(2) directs the Court to determine custody in accordance with the best interests of the child, with equal consideration given to each parent and to any de facto custodian. Generally, there is a rebuttable presumption, refutable by a preponderance of the evidence, that joint custody and equal parenting time is in the child's best interest; however such presumption does not apply where a domestic violence order has been entered against one party KRS 403.315. Additionally pursuant to KRS 403.320(1), a parent not granted custody and not awarded shared parenting time is entitled to reasonable visitation rights unless the court finds that

visitation would seriously endanger the child's physical, mental, moral, or emotional health.

There is a Domestic Violence Order (DVO) protecting [Mother] from any contact by [Father] until January 20, 2028. Based on the reports by [Mother's] therapist, it is evident that she has made efforts to co-parent with [Father]. However, she has experienced severe anxiety and heightened emotional responses from [Father's] aggressive and abusive behavior, which negatively affects her ability to foster a cooperative relationship. [Mother] is understandably fearful for her and her children's safety having been attacked by [Father] at exchanges of the children and he has punched holes in the walls.

Based on the foregoing, the Court finds that it would be in the children's best interest for [Mother] to be awarded sole custody . . . . The parties are unable to co parent with a no contact DVO in place. [Father] does not recognize that his actions towards [Mother] were inappropriate and cause significant harm to her and the children. This means she will have sole decision-making authority over all major issues involving the children.

The Court also finds that it would be in the child's best interest to reside exclusively with [Mother]. The Court further finds that unrestricted visitation with [Father] would seriously endanger the children's physical, mental, moral, or emotional health. [Father] shall have no contact with the children at this time.

[Father] shall not have any contact with [either child], **unless the children initiate such contact**. [Father] shall not visit the children at school. [Father] shall not attempt to call or message the children directly or through social media, and he shall not send messages through third parties.

> [Father] shall complete a course of anger management classes with a provider of his choosing. [Father] shall also undergo a full psychiatric evaluation with a licensed professional of his choosing at his sole cost. The Court is unlikely to reinstate any contact with the children until [Father] complies with this provision. [Father] may file a motion and present himself to Court and provide proof of his compliance at the appropriate time.

(Emphasis added.)

On September 18, 2025, Father, now by counsel, filed notice of appeal to this Court. Mother has not filed a brief.

> When a responsive brief has not been filed, we may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judgment if the appellant 's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case. Kentucky Rule of Appellate Procedure ("RAP") 31(H)(3). The decision as to how to proceed in imposing such penalties is a matter committed to our discretion.

*Adair v. Emberton*, 694 S.W.3d 52, 56 (Ky. App. 2024) (internal quotation marks and citations omitted). We decline to impose any penalty for Mother's failure to file an Appellee's brief and instead have elected to review the case on its merits.

We have carefully reviewed the recorded proceeding in its entirety and note that the conduct of the proceedings varies in tone and context other than how it is characterized in Appellant's brief. For example, at page 2, paragraph 2, Father states: "At the outset, both parties informed the court that they had

submitted video evidence weeks prior that the court had not reviewed.  Virtual

Record (VR) at 09:04:29 to 09:04:55.  When concern was expressed about the

missing evidence, the court responded: "I don't want the whining, okay?  Thank

you.  VR at 09:05:48 to 09:06:08."

However, the record itself reflects a different version of that

interchange prior to commencement of the hearing:

> **The Court**:  We've got both parties present today . . . it looks like this is a request for sole custody by Petitioner, to establish a parenting schedule and for child support, so . . . this is sort of like our final hearing.  Is that all the outstanding issues between you all?
>
> **Mother**:  Well I hope so. . . .  I submitted everything to you guys for just giving the whole rundown of what was going on.  He [Father] submitted a video, a edited video.
>
> **The Court**:  I haven't seen the video.
>
> **Mother**:  You didn't get the video?
>
> **Father** (addressing the Court):  I submitted a file to you, Exhibit "A" . . . .
>
> . . .
>
> **The Court** (looking through the file):  I don't have that, I mean was that like a flash drive? . . .
>
> **Mother**:  Yes.  I submitted it downstairs.
>
> **The Court**:  How long ago?
>
> **Father**:  I submitted it three weeks ago.

**Mother**: Yea, it's been a while.

**The Court**: It hasn't made it into my file, I can certainly email my . . . .

**Father**: Your honor . . . I would just like to know what are we doing here, so I understand . . . .

**The Court**: What I just said, I literally just said we're having our like final hearing . . . .

**Mother**: Do you have the pictures, the text messages, do you have anything?

**Father**: I would like to know what you have on file . . . because I have not received anything in regard to my motion, my affidavit that I submitted . . . .

**The Court**: Well, as long as you all each received it . . . .

**Mother**: That was weeks ago . . . .

**The Court**: Please don't complain to me. Would you like to reschedule it? So, that we can have you come back and I can have all the materials in front of me? I'm trying to email my Clerk right now.

**Mother**: Ok.

**The Court**: Ok. So it is what it is, we're going to try to get through it together. But, then I don't want that whining . . . .

Another example is at page 2, paragraph 3 of Appellant's brief.

Father states that "[t]hroughout the hearing, the court repeatedly interrupted

Father's attempts to present his case. When Father attempted to ask questions or

make arguments, the court threatened him with contempt, stating he could be

incarcerated for up to 180 days' and 'fined up to $500.'" Our review of the record

reflects that Father interrupted the court while it was questioning Mother about the

children's ages, school, and daycare arrangements. The court stated: "Sir, I'm

going to have you not interrupt. I'm starting off with [Mother] and you can

patiently wait okay." The court resumed questioning Mother. Almost

immediately, Father attempted to interrupt again. The court then admonished him

as follows:

> I'm going to have to put you on mute. Please do not
> interrupt and if you interrupt me again you could be held
> in contempt of court, you could be incarcerated for up to
> 180 days, you could be fined up to $500.00. So I would
> caution you to not interrupt me again and please don't
> interrupt [Mother].

Contrary to Father's contention in his brief, it was he who repeatedly

interrupted the proceedings rather than the court. Those nuanced discrepancies

have somewhat distorted the actual tenor of what transpired.

We proceed with our review.

Father's first argument is that the family court failed to make the

required findings under KRS 403.270(2). We agree. The statute provides:

> (2) The court shall determine custody in accordance with
> the best interests of the child and equal consideration
> shall be given to each parent and to any de facto
> custodian. Subject to KRS 403.315,[5] there shall be a

---

[5] KRS 403.315 provides in relevant part that "If a domestic violence order . . . has been entered
against a party by another party . . . the presumption that joint custody and equally shared

-9-

presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare. **The court shall consider all relevant factors including**:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody;

(b) The wishes of the child as to his or her custodian, with due consideration given to the influence a parent or de facto custodian may have over the child's wishes;

(c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests;

(d) The motivation of the adults participating in the custody proceeding;

(e) The child's adjustment and continuing proximity to his or her home, school, and community;

(f) The mental and physical health of all individuals involved;

(g) A finding by the court that domestic violence and abuse, as defined in KRS 403.720, has been committed by one (1) of the parties against a child of the parties or against another party. The court shall determine the extent to which the domestic violence and abuse has

---

parenting time is in the best interest of the child shall not apply as to the party against whom the domestic violence order . . . has been entered. **The court shall weigh all factors set out in KRS 403.270 in determining the best interest of the child**." (Bold-face emphasis added.)

-10-

affected the child and the child's relationship to each party, with due consideration given to efforts made by a party toward the completion of any domestic violence treatment, counseling, or program;

(h) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(i) The intent of the parent or parents in placing the child with a de facto custodian;

(j) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school; and

(k) The likelihood a party will allow the child frequent, meaningful, and continuing contact with the other parent or de facto custodian, except that the court shall not consider this likelihood if there is a finding that the other parent or de facto custodian engaged in domestic violence and abuse, as defined in KRS 403.720, against the party or a child and that a continuing relationship with the other parent will endanger the health or safety of either that party or the child.

(Bold-face emphasis added.)

Although the family court correctly cited the applicable statutes, it failed to follow the mandates of KRS 403.270(2) ("The court shall consider all relevant factors") and KRS 403.315 ("The court shall weigh all factors set out in KRS 403.270") in determining the best interest of the child. Indeed, as Father

notes, the family court's decision does not specifically mention the KRS

403.270(2) factors at all.

> [C]ompliance with CR 52.01 and the applicable sections of KRS Chapter 403 requires written findings, and [we] admonish trial courts that it is their duty to comply with the directive of this Court to include in all orders affecting child custody the requisite findings of fact and conclusions of law supporting its decisions. Consideration of matters affecting the welfare and future of children are among the most important duties undertaken by the courts of this Commonwealth. In compliance with these duties, it is imperative that the trial courts make the requisite findings of fact and conclusions of law to support their orders.
>
> . . .
>
> We do not expect the appellate courts of this state to search a video record or trial transcript to determine what findings the trial court might have made with respect to the essential facts. Moreover, the final order of the trial court, especially in family law cases, often serves as more than a vehicle for appellate review. It often becomes a necessary reference for the parents and third parties, such as school officials, medical providers, or other government agencies with responsibilities requiring knowledge of the facts determined by the trial court. The judges presiding over family law matters must be mindful of the ramifications of their written orders. A bare-bone, conclusory order . . . setting forth nothing but the final outcome, is inadequate and will enjoy no presumption of validity on appeal.

*Keifer v. Keifer*, 354 S.W.3d 123, 125-26 (Ky. 2011).

We further agree with Father that the family court erred by denying all visitation without making the required finding that visitation would endanger the children.

KRS 403.320 provides in relevant part:

(1) A parent not granted custody of the child and not awarded shared parenting time under the presumption specified in KRS 403.270(2), 403.280(2), or 403.340(5) is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health. Upon request of either party, the court shall issue orders which are specific as to the frequency, timing, duration, conditions, and method of scheduling visitation and which reflect the development age of the child.

(2) If domestic violence and abuse, as defined in KRS 403.720, has been alleged, the court shall, after a hearing, determine the visitation arrangement, if any, which would not endanger seriously the child's or the custodial parent's physical, mental, or emotional health.

The court found "that unrestricted visitation with [Father] would seriously endanger the children's physical, mental, moral, or emotional health. [Father] shall have no contact with the children at this time." This finding simply mirrors the language of the statute without stating **the necessary factual basis for** the court's conclusions; thus, it does not meet the criteria of *Keifer*, 354 S.W.3d 123.

-13-

We turn next to Father's argument that the family court improperly took judicial notice of findings from companion cases without providing notice or an opportunity to be heard by failing to announce that intention at the hearing; Father only learned of it when he received the written order. We agree.

In its Findings of Fact, Conclusions of Law, and Judgment, the family court -- *sua sponte* -- took judicial notice "of findings and orders" in three companion cases. "It is true that a circuit or family court may take judicial notice of its own records and on its own initiative." *S.R. v. J.N.*, 307 S.W.3d 631, 637 (Ky. App. 2010). However, KRE[6] 201(e) requires an opportunity to be heard. The Rule provides that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." *Id.* Father did not have that opportunity.

In light of the foregoing determinations, we vacate the family court's Findings of Fact, Conclusions of Law, and Judgment in its entirety. As they are not dispositive of our conclusion, Father's remaining arguments concerning evidentiary objections, anger management, and the order for psychological evaluation need not be addressed at this juncture. They remain for a reconsideration by the family court upon remand.

---

[6] Kentucky Rules of Evidence.

We also note that in his concluding prayer for relief, Father asks that we order that a new judge be assigned to this case. However, we note that he failed either to ask the trial judge to recuse or to comply with the recusal provisions of KRS 26A.020(1). Therefore, we decline to address this request.

We vacate and remand with direction that the family court grant a new hearing and make specific findings of fact and separate conclusions of law with appropriate consideration of the factors outlined in the applicable statutes. It may choose to re-visit any matters relevant to that undertaking. We *do not* direct any particular result.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Jason A. Bowman
Louisville, Kentucky

-15-